FORMER EMPLOYEES OF TYCO TOYS, INC., PLAINTIFF v. WILLIAM E. BROCK, SECRETARY OF LABOR, DEFENDANT

Court No. 87–09–00945

(Decided August 26, 1988)

*International Union, UAW (Jordan Rossen, Leonard R. Page* and *Richard W. Mc-Hugh)* for plaintiff.

*John R. Bolton,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch *(Sheila N. Ziff),* Civil Division, United States Department of Justice, for defendant.

OPINION

RESTANI, *Judge:* This is an action challenging the Secretary of Labor's denial of trade adjustment assistance to a group of employees. The basis for eligibility for such assistance is found at 19 U.S.C. § 2272[1] (1982 & Supp. IV 1986). In this case, the Secretary of Labor concluded that the decrease in employment, sales and production

---

[1] 19 U.S.C. § 2272 reads in relevant part as follows:

§ 2272. Group eligibility requirements

The Secretary shall certify a group of workers * * * as eligible to apply for adjustment assistance under this part if he determines—

　　(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

　　(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

experienced at Schaper Manufacturing Company's (Schaper) Lakeville, Minnesota plant and warehouse and its Plymouth, Minnesota offices were not caused by increases in imported toys, and therefore determined that plaintiffs did not meet the statutory criteria for trade adjustment assistance.

Schaper was a division of Kusan, Inc. of Nashville, Tennessee. The Lakeville plant produced "Cosom" sport toys and games. Schaper also imported products for which it made accessories at the Lakeville plant. The findings of the investigation included the following: (1) that the Lakeville plant had been underutilized since it was built in 1973, (2) that between 1980 and 1985 employment at the Lakeville facilities increased to handle packaging and manufacture of accessories for an imported toy, "Stompers," (3) that as is common for toys, Stompers eventually decreased in popularity, and (4) that sales and production declined as a result. In 1986 Kusan, Inc. sold Schaper to Tyco Industries of Moorestown, New Jersey and Tyco allegedly moved production and handling of the Cosom and Stompers lines to New Jersey and Massachusetts.

Plaintiff claims that the Secretary's investigation was inadequate and that the resulting decision is not based on substantial evidence. First, plaintiff objects that no investigation was performed to determine if imports, in part, caused the plant closing, particularly, that no customer survey was performed to determine whether Schaper's customers began buying imported toys as opposed to domestically manufactured toys. Defendant contends that most of Schaper's products in the year immediately prior to closing were imported, that vital Stompers business actually was lost to domestic competition, and that Schaper's remaining domestic manufacturing did not cease, it merely moved elsewhere within the United States.

The problem with these conclusions is that they are based on information provided by one source who is without complete personal knowledge of the facts and there is no documentary evidence to back the conclusions up.[2] The Secretary never tried to get business records from the purchasing company and it never obtained the purchaser's statement as to why it closed the plant and what happened to production.

This investigation was put on a fast track and, as indicated, only one person without direct knowledge of all the information purportedly relied on, was interviewed. That person also made comments, found at pp. 33, 39 and 42 of the confidential record which indicate a certain bias against provision of trade adjustment funds to the claimants. This provides an additional reason why the investigators should have sought some corroboration of the statements made. Furthermore, petitioning workers were unable to respond to the

---

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

For purposes of paragraph (3), the term "contributed importantly" means a cause which is important but not necessarily more important than any other cause.

[2] The one source does not claim personal knowledge of what transfer of production occurred domestically.

statements relied on because no records were sought. This also means any relevant records are unavailable for review here.[3]

The import statistics gathered by the Secretary show rising imports and there seems to be a general consensus that lower labor costs overseas have led to attractively priced imported toys replacing some domestically manufactured toys. Contrary to the seeming thrust of the findings, this company is not a mere importer of foreign goods. It manufactured some products or parts of products domestically. An issue to be examined is whether its customers turned to imported products or whether the corporate purchaser foreign sourced the domestically produced items. The fact that one cause of the plant's closing is unrelated to increased imports should not be determinative; an investigation should be conducted so that the Secretary has evidence on which to base a decision that increased imports did or did not contribute importantly to the separations. Statements from the one source that are inconsistent, uncorroborated, not entirely based on personal knowledge, and possibly biased do not constitute substantial evidence.

Although the Secretary has discretion to do investigations in many different ways, he has failed to do an adequate investigation here. This matter is remanded for the Secretary to seek relevant information from Tyco Toys and to perform a customer survey if possible. The Secretary may take whatever other steps he deems necessary to reach substantiated conclusions.

---

[3]The same source stated that the records would be difficult to obtain. As indicated, the Secretary does not claim that he tried to get them.